[No. 3851–2.   Division Two.   October 24, 1979.]

*In the Matter of the Welfare of*
DONALD FREDERICK ADAMS.

*David D. Gordon,* for appellant (appointed counsel for appeal).

*Don Herron, Prosecuting Attorney,* and *Mack E. Call, Deputy,* for respondent.

SOULE, J.—Defendant appeals from an order of the juvenile court finding that he has violated the provisions of RCW 9A.88.100. We affirm.

The defendant and the complaining witness repaired to a little-used area in their school. At the time they were discovered by a school counselor they were on the floor and the complaining witness' slacks were down around her mid-thigh. Defendant's state of dress is not made clear from the record but he admits to being sexually excited by the activities of the moment.

The two participants differ as to who removed the complaining witness' slacks. Defendant claims that she did it and that he merely touched the outer part of her hips while kneeling beside her. He did admit, however, that he had undone a button on her slacks. The complaining witness testified that it was the defendant who removed her clothing after forcing her to the floor, but she is vague as to what parts of her anatomy were actually touched by the defendant. She did assert that defendant was on top of her, but she describes it as a kneeling position using his hands to undo her belt and slacks.

A more definitive, and perhaps more objective description of the posture of the parties was given by the school counselor who happened upon the scene.

> I'm not sure where his hands were. He may have had one on the floor and the other towards her shoulder, but I'm frankly not sure. *I know his body was prone, outstretched, and he was trying to rock and work his way into her,* apparently to submit or something.

(Italics ours.) That the purpose of the whole encounter was to gratify sexual desire is clear.

The primary issue at the trial level was whether the touching was consensual. The trial judge found that it was not and there is no appeal based upon this aspect of the case.

The other issue was and is whether there is evidence of

the touching of "sexual or other intimate parts" within the meaning of RCW 9A.88.100(2).[1]

In resolving this issue against defendant, the trial court said:

> Now, as to the touching: By Jackie's version, Donald in effect removed her pants or pulled them down, whatever it took. By Donald's testimony, he broke the button or pulled it off or opened up her pants. I don't find any difficulty there, when he is a part of removing her pants, *and he is on top of her when they are found.* And when I say "removing," at least getting them down. There is a touching and that is complying with the statute. The court doesn't have to be more explicit than that, and the statute doesn't have to be more explicit.

(Italics ours.)

A threshold question to be resolved is the standard by which it is determined what parts of the body are "sexual or other intimate parts." If a contact is directly to the genital organs or breasts, the question is susceptible of being resolved as a matter of law. *State v. Turner,* 33 Ore. App. 157, 575 P.2d 1007 (1978); *State v. Pagel,* 16 Ore. App. 412, 518 P.2d 1037 (1974).

The term "intimate parts" is somewhat broader in connotation than the term "sexual." In construing statutes similar to ours, it has been held that the buttocks are an intimate part. *In re M.,* 93 Misc. 2d 545, 403 N.Y.S.2d 178 (1978); *People v. Thomas,* 91 Misc. 2d 724, 398 N.Y.S.2d 821 (1977); *State v. Buller,* 31 Ore. App. 889, 571 P.2d 1263 (1977). We note also that it may be through the clothing. *People v. Thomas, supra; State v. Buller, supra;*

---

[1]RCW 9A.88.100 reads in part:

"(1) A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:

"(a) By forcible compulsion; or

". . .

"(2) For purposes of this section, "sexual contact" means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party."

*State v. Peterson,* 560 P.2d 1387 (Utah 1977). It is not necessary that the contact be by the hand of the aggressor. *In re M., supra.*

The determination of which anatomical areas apart from the genitalia and breasts are intimate is a question to be resolved by the trier of the facts. *State v. Buller, supra; State v. Turner, supra* (dicta).

*Turner* does suggest that there may be some problem with the statute as excessively vague to the extent that the determination is left to the jury. We think otherwise. The test is whether the words defining the prohibited acts, when read in the context of the statute, are sufficiently clear to provide a person of common intelligence and understanding with fair notice and ascertainable standards as to the conduct sought to be prohibited. *State v. Zuanich,* 92 Wn.2d 61, 593 P.2d 1314 (1979); *State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979); *State v. Carter,* 89 Wn.2d 236, 570 P.2d 1218 (1977); *State v. Hood,* 24 Wn. App. 155, 600 P.2d 636 (1979). *See also People v. Blodgett,* 37 App. Div. 2d 1035, 326 N.Y.S.2d 14 (1971).

In determining what is fair notice to a citizen, it is not necessary that the statute spell out every detail. Some aspects of the prohibited conduct may be left to the commonly accepted community sense of decency, propriety and morality. *See State v. Stuhr,* 1 Wn.2d 521, 527, 96 P.2d 479, 482, (1939); *People v. Jones,* 75 Mich. App. 261, 272, 254 N.W.2d 863, 868 (1977).

As with the buttocks, we believe that the hips are a sufficiently intimate part of the anatomy that a person of common intelligence has fair notice that the nonconsensual touching of them is prohibited, particularly if that touching is incidental to other activities which are intended to promote sexual gratification of the actor. In other words, the hips need not be the primary objective, nor were they in this case. The necessary result of the removal of the slacks was to render more accessible the lower abdomen of the complaining witness and the defendant then outstretched himself prone upon her and rocked as if trying to work his

way in. The trier of the fact was entitled to conclude that this was a touching of intimate parts sufficient to demonstrate violation of the statute.[2]

Further, the conduct was of such a nature that a person of common intelligence could fairly be expected to know that under the circumstances the parts touched were intimate and, therefore, the touching was improper. The statute is directed to protecting the parts of the body in close proximity to the primary erogenous areas which a reasonable person could deem private with respect to salacious touching by another.[3] A person of common understanding should have no trouble in recognizing that the hips and lower abdomen are such parts.

For ease in disposing of this appeal, it would have been helpful if the trial judge had made a more detailed statement, but it is clear from his opinion that he made his determination not only on the explicit touching of the hips, but upon the implicit touching necessarily involved in defendant's position on top of the victim when they were found by the counselor. Circumstantial evidence may be used to prove any element of a crime. *State v. Lewis,* 69 Wn.2d 120, 417 P.2d 618 (1966); *State v. Garcia,* 20 Wn. App. 401, 579 P.2d 1034 (1978). The record contains substantial evidence to support the trial court's decision. *State v. Partin,* 88 Wn.2d 899, 567 P.2d 1136 (1977).

---

[2]We recognize that the community standards of decency, propriety and morality have degenerated markedly since the time of the decision in *State v. Stuhr,* 1 Wn.2d 521, 96 P.2d 479 (1939), but we are satisfied that they do not yet countenance the type of conduct testified to in this case. Neither do we care to believe that the monitoring standards in the public schools are as permissive as might be inferred from the testimony of the counselor when he said:

"When I first see something, you don't think about what they are doing. They play around the building and things go on, but unless something grabs your attention like a streaker running down the hall with absolutely no clothes on, you don't pay much attention at first glance."

[3]*See* Wash. State Criminal Justice Training Comm'n, *Revised Criminal Code Training and Seminar Manual,* Comments to 9A.88.100 at 3–4 (1976). *See also* dissenting opinion, *State v. Turner,* 33 Ore. App. 157, 165, 575 P.2d 1007, 1011 (1978).

522

The judgment is affirmed.

PEARSON, C.J., and REED, J., concur.